(No. 3865—

ESTHER HISLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1945.*

CLAIMANT, pro se.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

FISHER, C. J.

Claimant seeks an award under the Workmen's Compensation Act for the death of her husband, Walter G. Hisler.

At the time of the death of Walter G. Hisler he was an employee of the State of Illinois, Division of Parks and Memorials. He was first employed by the Division on April 10, 1941, and claimant alleges that on March 16, 1944 her husband, the said Walter G. Hisler, met his death while performing his duties and in the course of his employment.

The record consists of the Claim, Departmental Report, copy of Testimony taken at Coroner's Inquest, Verdict of the Coroner's Jury, Stipulation, certified copy of Claimant's Marriage Certificate, and Waiver of Statement, Brief and Argument by claimant, pro se, and respondent by the Attorney General.

The report of the Division of Parks and Memorials, by George W. Williams, Superintendent, shows that during the year preceding his death on March 16, 1944, Mr. Hisler was regularly employed as Custodian of the Illinois and Michigan Canal Parkway, and his yearly salary was the sum of $1,560.00. Among his duties were those of keeping the Illinois and Michigan Canal between Peru and Buffalo Rock free of debris, repairing and maintaining pathways, roads and bridges, maintaining and keeping all shelter houses clean, keeping the residence assigned to him and surrounding area orderly and in repair, and acting in a policing capacity on Sundays and holidays.

On the morning of March 16, 1944 at approximately 8:45 A. M. Mr. Hisler was returning on foot to his residence from the city of LaSalle where a truck assigned to him had been taken for inspection and repairs. The Department Report concludes "Mr. Hisler was recognized by his superiors and fellow workers as a conscientious and capable workman, free of domestic and financial worries, and affable in meeting and dealing with the public. The investigation of the Division of Parks and Memorials leads to the conclusion that Mr. Hisler's death arose out of and in the course of his employment."

On the 20th day of March, 1944 the Coroner of LaSalle County held an inquest to ascertain the cause of death and the Coroner's jury found as follows:

"We, the undersigned Jurors, sworn to inquire of the death of Walter Hisler on oath do find that he came to his death by accidental drowning while on duty as an employee of the State of Illinois in his regular occupation along the tow-path of the Illinois-Michigan Canal. He was last seen alive Thursday morning, March 16, 1944, at 8:45 A. M. His death presumably occurred at 9:30 A. M., March 16, 1944. He was employed as Maintenance man and Lock-Tender at Illinois-Michigan Canal."

The only question that presents itself for determina-

tion here is—did the deceased meet his death in the course of and within the scope of his employment.

It is stipulated that the Departmental Report of the Division of Parks and Memorials shall constitute the record in this case. The Department, in this report, concludes that the decedent met his death within the scope and as a result of his employment. The facts upon which this conclusion is reached are not included in the report. The testimony at the Coroner's Inquest ascertained the nature of the employment of the decedent and traced his movements until he was last seen, which was on the morning of March 16, 1944.

This court, feeling it should have more of the facts and information than was disclosed by the record in this case, did, on its own initiative, request the Division of Parks and Memorials to file a report of the facts disclosed by its investigation. The Division thereupon filed a letter from Terrence Martin, Custodian of Starved Rock State Park addressed to George A. Williams, Superintendent of State Parks and Memorials, which letter is dated November 3, 1945 and states, in substance, as follows:—That Mr. Martin personally investigated and inquired into the facts concerning the death of Walter G. Hisler; that Mr. Hisler disappeared on the 16th day of March, 1944 and that an intensive search for him began on the morning of March 17, 1944; that the search was conducted by State Park employees, the Sheriff's Office local police authorities and Mr. Martin. That on the 18th day of March, 1944 about 1:40 P. M. John DeGroot of Peru and Stanley Murray, Deputy Sheriff, while dragging the lock and basin adjoining, found the body of Walter G. Hisler; that the body was immediately taken to the funeral home, at which time the Coroner was notified. The undertaker, Anton Friedrich, as related by

Mr. Martin, stated that "there were no abrasions or injuries found on the body and that lots of water came out. The Coroner said the body had been in the water about three days. The Coroner's Jury again examined the body the following morning at the inquest. As they found no indication of foul play, and from evidence on hand, a verdict of drowning was returned. The Coroner informs me that no post-mortem was ordered by the family or authorities, therefore there was none."

While the burden of proving that an injury or death arose out of and within the scope of the employment rests upon the claimant, this proof cannot always be made by positive and direct evidence. In this case, no one saw the deceased between the morning of March 16, 1944 and the time his body was found in the canal on March 19, 1944. The cause of his death can only be determined from certain facts and circumstances, from which a reasonable conclusion can be reached. The decedent was proved to be a man of good habits, a conscientious worker, without domestic or financial worries, and when last seen was performing the duties required of him by his employment. Part of such duties brought him to and about the bank of the Illinois-Michigan Canal. His body was found submerged in the water. The record rather conclusively shows that no reasonable conclusion can be reached other than that the decedent came to his death during the course of and within the scope of his employment. His surviving widow, Esther Hisler, is, therefore, entitled to the benefits of the Workmen's Compensation Act.

Decedent left him surviving his widow and one child under the age of sixteen years dependent upon him for support at the time of his death.

Decedent's salary for the year preceding his death

amounted to $1,560.00. Decedent's weekly wage was $30.00, and his compensation rate $15.00 per week, and, having one child under the age of sixteen years at the time of his death the weekly rate must be further increased 5% under Section 7 (3), plus 17% under Section 7 (1), or a total of $18.50 per week.

Claimant is entitled to an award under Sections 7 (a) and 7 (h-3) of the Workmen's Compensation Act, in the amount of $4,450.00, which must be increased 17½% under Section 7 (1), making a total of $5,228.75.

An award is therefore entered in favor of claimant, Esther Hisler, in the sum of $5,228.75, payable as follows:

$1,604.21—86 5/7 weeks, March 16, 1944 to November 13, 1945—all of which has accrued and is payable forthwith;
$3,624.54—Payable $18.50 per week, commencing November 13, 1945.

This award is subject to the approval of the Governor as provided in Section 3 of "an Act concerning the payment of compensation awards to State employees."